IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| South Carolina State Conference of the NAACP; Ibram X. Kendi; Ayanna Mayes; Mary Wood; T.R., a minor by and through their father and next friend, Todd Rutherford and J.S., a minor by and through their mother and next friend, Amanda Bradley,<br><br>Plaintiffs,<br><br>vs.<br><br>Ellen Weaver in her official capacity as South Carolina Superintendent of Education; Lexington County School District Three; and School District Five of Lexington & Richland Counties,<br><br>Defendants. | C/A No. 3:25-CV-487-SAL<br><br><br><br><br><br><br><br><br><br>**DECLARATION OF**<br>**DR. AKIL E. ROSS, SR.** |

THE AFFIANT TESTIFIES AS FOLLOWS:

### A.     BACKGROUND

1. My name is Akil E. Ross, Sr. and I am over the age of 18 and otherwise qualified to give sworn testimony in Court.

2. I am the District Superintendent for School District Five of Lexington and Richland Counties.

3. I was hired by the Board of Trustees for the District who are elected by the voters in the school district.

4. I submit this sworn statement in response to the motion for preliminary injunction in this lawsuit. This statement sets forth the official policies of the District as set forth by its elected representatives and administered by me as its duly hired and appointed superintendent.

1

B.     **TEACHER AND ADMINISTRATION RELATIONS**

5.     The District strives to maintain effective communications and relations with academic staff including teachers and librarians.

6.     As part of this goal, District Policy GBK Staff Concerns, Complaints/Grievances establishes "the basic structure for orderly and expeditious resolution of staff concerns, complaints and grievances." (Exhibit A).

7.     Policy GBK defines a grievance as:

A disagreement involving the work situation in which an individual or group of individuals believes that an injustice has been done because of lack of policy, or because of a policy that is unfair, deviation from or misapplication of interpretation of a policy. …

8.     Policy GBK provides a process for employees to pursue any disagreements regarding policy through administration and ultimately to the Board of Trustees if not satisfied with the administration's response.

9.     This policy is provided to all staff and is publicly available through the District's website - www.lexrich5.org/our-district/board-of-trustees.  It is included in employee handbooks which are provided to staff.

10.    Neither Ms. Wood nor Ms. Mayes have invoked this policy in any way regarding the allegations set forth in the complaint or their statements.

11.    As a result, the concerns Ms. Wood and Ms. Mayes express in this lawsuit and their statements have not been brought before the Board of Trustees for a vote or presented through the appropriate process to the administration.

12.    In addition, if Ms. Wood or Ms. Mayes have concerns regarding the appropriateness of materials they wish to provide students, they may raise these issues for clarification with their supervisors and through the chain of supervisors to me as District Superintendent.

13. The District follows a policy of academic freedom exercised in the best interest of teachers, students and the community. This policy is set forth as Policy IB Academic Freedom attached as Exhibit B.

14. Among other provisions, the policy requires that:

Teachers will not attempt, directly or indirectly, to limit or control students' judgement concerning any issue. Teachers will make certain that full and fair consideration is given to the subject and that facts are carefully examined as to their accuracy and interpretation.

15. The policy also requires that teachers "will consult with the administration on the appropriateness of discussing any planned controversial issues with students."

16. If either Ms. Wood or Ms. Mayes have concerns regarding teaching or administering the library, they are free to consult administration through appropriate channels for guidance as set forth in District policy.

C. **EMPLOYMENT ACTIONS: NO ADVERSE EMPLOYMENT ACTIONS HAVE BEEN TAKEN AGAINST MS. WOOD OR MS. MAYES.**

17. No adverse employment actions have been taken as to Ms. Wood or Ms. Mayes.

18. No adverse employment actions will be taken as to Ms. Wood or Ms. Mayes as a result of this lawsuit or the allegations contained in it.

19. In fact, the Board of Trustees recently voted to renew Ms. Wood and Ms. Mayes' employment contracts for the 2025-2026 school year.

20. Like all academic staff, Ms. Wood and Ms. Mayes are hired on one-year contracts which are renewed yearly on the recommendation of administration and approved by a vote of the Board of Trustees. *See*, S.C. Code Ann. § 5-25-410 attached as Exhibit C.

21. The administration recommended the renewal of Ms. Wood and Ms. Mayes' contracts along with other academic staff contracts at the March 24, 2025, board meeting, and the

Trustees voted to renew these contracts for the 2025-2026 year. (Minutes of March 24, 2025, Board of Trustees Meeting attached as Exhibit D).

22. In fact, academic staff is protected from nonrenewal of their yearly contracts by the South Carolina Teacher Employment and Dismissal Act beginning at South Carolina Code § 59-25-410.

23. Under the Act, unless a teacher demonstrates "an evident unfitness for teaching," a teacher is entitled to written notice and an opportunity for corrective measures. *See*, S.C. Code Ann. § 59-25-430 ("Evident unfitness") and § 59-25-440 (Notice and Corrective Measures) Exhibits E and F.

24. Under either situation, a teacher is entitled to a due process hearing and an appeal to the South Carolina Circuit Court for any termination or nonrenewal of a one-year contract.

25. Neither Ms. Wood nor Ms. Mayes have received a written notice of possible dismissal, and neither Ms. Wood nor Ms. Mayes will receive a written notice of possible dismissal as a result of this lawsuit or the allegations made in it.

26. No staff member has received any discipline or written notice of possible dismissal for any of the allegations in the lawsuit, and none is contemplated.

### D.    MS. WOOD'S ALLEGATIONS OF CENSORSHIP

27. Approximately two years ago in early 2023, the District received parental complaints regarding Ms. Wood's English class and its section on argumentative writing.

28. The District investigated these complaints and asked that Ms. Wood modify her lesson plan.

29. The modified lesson plan included the book <u>Between the World and Me</u> by Ta-Nehisi Coates, portions of which had led to the parental complaints. Ms. Wood is free to use this

book as a teaching resource which she has done for the last two years without interference from the District.

30.     Ms. Wood never took advantage of Policy GBK regarding any concerns or complaints she had with modification of her lesson plan approximately two years ago.

31.     In addition, Ms. Wood retained Attorney Allan Nickles regarding the questions raised by the parents, and the District's response.  Mr. Nickles also raised questions on behalf of the South Carolina Education Association and the National Education Association.

32.     On July 11, 2023, I met with Mr. Nickles regarding the issues he raised on Ms. Wood's behalf.  Attorney Kathy Mahoney and Chief Human Resources Officer Dr. Tamara Turner were at the meeting on behalf of the District.

33.     As a result of that meeting, Attorney Kathy Mahoney wrote Mr. Nickles setting forth the District's commitment to academic freedom and appropriate classroom instruction.  That letter and its attachments are attached as Exhibit G.

34.     Ms. Mahoney's letter sets forth the District's commitment to free speech and includes the Academic Freedom policy I referenced earlier in this Declaration.

35.     In addition, it includes statements of policy I made to the media and correspondence and policy explanation sent out to District principals for distribution to all academic staff explaining the District's policies on academic freedom.

### E.     MS. MAYES' CONCERNS REGARDING APPROPRIATE LIBRARY MATERIALS

36.     Ms. Mayes' concerns regarding the selection of appropriate books for the library have not been raised to the District prior to this lawsuit.

37.     Ms. Mayes has not taken advantage of Policy GBK to raise any sort of grievance through administration to the Board regarding the concerns she has raised in this lawsuit.

38. District Policy IJL-R Library and Instructional Materials Selection and Adoption sets forth the procedure for adoption of library materials. (Exhibit H).

39. This policy sets forth the procedure for review of any questioned materials in the school library as follows:

> If there is a question of whether a book/material should be removed, maintained or added to the school library due to the criteria set forth above, the following process shall be followed:
>
> - If the school librarian has a book or instructional material that he/she questions the criteria set forth above, he/she will send the title of the book to the lead librarian of their group for additional review.
> - The lead librarian will then add this to the agenda at the following Leadership meeting.
> - If agreement is determined, then the material may be maintained or added to the library.
> - If consensus can not be reached, the material is sent to the Coordinator of Instructional Technology who will evaluate the book/material alongside the Superintendent or his/her designee (Chief of Academics).
> - The decision will be made by the Superintendent or his/her designee, the Chief of Academics, whether to maintain/add the book/material or to discard/not purchase the book/material.

40. As a result, there is a process for the review of any books that Ms. Mayes may be concerned are inappropriate for the school library.

41. Ms. Mayes has never received employee discipline for any of the allegations made in the compliant or selections of books.

42. If Ms. Mayes has questions regarding appropriate materials for the school library, she should follow District Policy IJL-R to resolve those questions. She will not be disciplined for appropriately following District policy.

### F.    BOOK CHALLENGE POLICIES

43. The lawsuit references a book challenge which took place in 2022 to a children's book titled Black is a Rainbow Color.

44. Pursuant to Board Policies KEC and KEC-R, the District had the book evaluated by a committee of educators when it was challenged by a parent. (Exhibits I and J).

45. The complaint was dismissed based on that panel's recommendation and the book remains in the School District's libraries.

### G.     AFRICAN AMERICAN HISTORY CLASSES

46. The District has taught an African American history class for fifteen years. This year, the District added an Honors African American studies class. The class was approved by unanimous vote of the Board on February 10, 2025. (Board Minutes and materials attached as Exhibit K).

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on: April 16, 2025

_____
Akil E. Ross, Sr. Ed.D.

Submitted pursuant to 28 U.S.C. § 1746