IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| South Carolina State Conference of the NAACP, Ibram X. Kendi, Ayanna Mayes, Mary Wood; T.R. and J.S.<br><br>    Plaintiffs,<br><br>v.<br><br>Ellen Weaver in her Official Capacity as South Carolina Superintendent of Education, Lexington County School District Three, and School District Five of Lexington & Richland Counties<br><br>    Defendants. | Case No.: 3:25-cv-487-SAL<br><br>**ORDER** |

This matter is before the court on the motions to dismiss filed by Ellen Weaver, Lexington County School District Three, and School District Five of Lexington & Richland Counties (collectively, "Defendants"). [ECF Nos. 49, 51.] Also pending is a motion for preliminary injunction filed by the South Carolina State Conference of the NAACP, Ibram X. Kendi, Ayanna Mayes, Mary Wood, and two minor children; T.R. and J.S. (collectively, "Plaintiffs"). [ECF No. 30.] Arguments were heard on July 30, 2025, and this matter is ripe for consideration.

**I.  Background**

During the 2021–2022 legislative session, the South Carolina General Assembly introduced five bills aimed at addressing concerns related to race and gender instruction.[1] [ECF

---

[1] The topics covered in these bills closely mirror Executive Order 13950 ("the Order") issued by President Donald Trump during his first term. The Order concerned nine issues deemed to be "divisive topics" and set limits on how these topics could be addressed. Executive Office of the President: Exec. Order No. 13950, "Combating Race and Sex Stereotyping," 85 Fed. Reg. 60,683 (Sept. 22, 2020).

1

No. 30-1 at 2–3.] When these bills failed to become law, the legislature incorporated similar restrictions through budget provisions. These provisions prohibit the South Carolina Department of Education ("SCDE") from using funds to teach concepts identified by the General Assembly as partisan or ideologically divisive, including instruction that:

(1) one race or sex is inherently superior to another race or sex;

(2) an individual, by virtue of his race or sex, is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

(3) an individual should be discriminated against or receive adverse treatment solely or partly because of his race or sex;

(4) an individual's moral standing or worth is necessarily determined by his race or sex;

(5) an individual, by virtue of his race or sex, bears responsibility for actions committed in the past by other members of the same race or sex;

(6) an individual should feel discomfort, guilt, anguish, or any other form of psychological distress on account of his race or sex;

(7) meritocracy or traits such as a hard work ethic are racist or sexist, or were created by members of a particular race to oppress members of another race; and

(8) fault, blame, or bias should be assigned to a race or sex, or to members of a race or sex because of their race or sex.

H. 5100, 2023–2024 Gen. Assemb., 125th Sess., Part 1B § 1.79 (S.C. 2024) (the "Budget Proviso").[2]

Plaintiffs are several individuals who claim they have been or continue to be harmed by the Budget Proviso. Defendants include two South Carolina school districts and SCDE Superintendent Ellen Weaver ("Weaver"). Plaintiffs filed suit on January 27, 2025, seeking to have the Budget Proviso declared unconstitutional under the First and Fourteenth Amendments. [ECF

---

[2] Every budget measure since 2021 has included the same language as the current Budget Proviso. [ECF No. 30-1 at 14.]

No. 34.] On March 17, 2025, they moved for a preliminary injunction, seeking *inter alia* to enjoin Defendants from enforcing and/or implementing the restrictions in the Budget Proviso or any future iterations of the Budget Proviso. [ECF No. 30.] Defendants moved to dismiss under Rules 12(b)(1) and 12(b)(6), arguing Plaintiffs lack standing and otherwise fail to state a claim for relief. [ECF Nos. 49, 51.] The court agrees that Plaintiffs lack standing.

**II.     Legal Standard**

    **A.  Standing Requirements**

Article III of the Constitution limits federal jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2. The Supreme Court has recognized that the "'case or controversy' requirement is fundamental to the judiciary's proper role in our system of government." *Murthy v. Missouri*, 603 U.S. 43, 56–57 (2024) (internal quotation marks omitted). Federal courts may only review statutes and executive actions when necessary "to redress or prevent actual or imminently threatened injury to persons caused by . . . official violation of law." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009).

A case or controversy exists only when at least one plaintiff establishes he has standing to sue. *Murthy*, 603 U.S. at 57. To establish Article III standing, a plaintiff must satisfy three elements from *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Under the first *Lujan* element, "the plaintiff must have suffered an 'injury-in-fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted). The second element requires "a causal connection between the injury and the conduct complained of." *Id.* As for the third element, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks omitted).

When assessing standing, a court presumes the validity of the plaintiff's legal claims. *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 298 (2022); *see also Warth v. Seldin*, 422 U.S. 490, 500 (1975) (recognizing that "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal"). Further, a court "must look to the facts at the time the complaint was filed." *Wild Va. v. Council on Env't Quality*, 56 F.4th 281, 293 (4th Cir. 2022). A district court may limit its standing inquiry to the allegations of the complaint or, if there are any material factual disputes, it may conduct an evidentiary hearing. *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

In First Amendment cases, the Fourth Circuit recognizes that the rigid standing requirements are somewhat relaxed, particularly with respect to the injury in fact element. *Davison v. Randall*, 912 F.3d 666, 678 (4th Cir. 2019). This is because, even where a First Amendment challenge could be brought by someone engaged in protected activity, there remains the possibility that, rather than risk punishment for his conduct in challenging the statute, he will refrain from engaging in the protected activity altogether. In such cases, society as a whole is the loser. *Sec'y of State of Md. v. Joseph H. Munson Co.,* 467 U.S. 947, 956 (1984); *see also Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) ("The leniency of First Amendment standing manifests itself most commonly in the doctrine's first element: injury-in-fact.").

### III. Discussion

#### A. The Student Plaintiffs: T.R., J.S., and the South Carolina State Conference of the NAACP Students

In 2022, after the Budget Proviso was enacted, a nonprofit developed an Advanced Placement African American Studies ("AP AAS") pilot course. This course was implemented in sixty schools nationwide, including at least a dozen in South Carolina during 2023–2024. [ECF No. 30-1 at 16–17.] Plaintiffs describe AP AAS as an interdisciplinary course examining African

American contributions and experiences through history, literature, the arts, geography, and science. The curriculum was developed with over three hundred African American studies scholars to explore diverse perspectives and key issues from early African kingdoms to present-day challenges. [ECF No. 34 ¶ 184.]

Beginning with the 2024–2025 school year, SCDE notified districts that it was ending the pilot program for AP AAS. *Id.* at 18. On June 4, 2024, Deputy Superintendent and Chief Academic Officer for SCDE, C. Matthew Ferguson ("Ferguson") informed district superintendents that no new AP courses were added, citing ongoing controversy over AP AAS and an upcoming review of social studies standards. Ferguson noted districts could still offer AP AAS locally as an honors course if they wished.[3] [ECF No. 30-5 at 2.]

Against this backdrop, the first group of plaintiffs—four students who, when the Budget Proviso was enacted, attended schools in the defendant school districts—claim, in part, that the measure violates their First Amendment rights both facially, by broadly prohibiting race-related concepts, and as applied, by denying them the right to receive information, that is, access to AP AAS and a more in-depth perspective on African American history and culture. [ECF No. 34 ¶¶ 244, 245.]

### 1. T.R. and J.S.

T.R., a Black sophomore at A.C. Flora High School, is disappointed that the AP AAS course is no longer available at his high school. [ECF No. 30-1 at 24; ECF No. 30-10 ¶ 14.] He

---

[3] Ferguson later claimed that SCDE's decision not to renew AP AAS was based on "pedagogical evaluations and assessments regarding the rigor and suitability of the course and to ensure its alignment with the soon-to-be updated social studies standards." [ECF No. 52-7 ¶ 14.] He further noted that while the team deciding whether AP AAS would be renewed was "aware of the public controversy surrounding AP AAS course, [] awareness of that controversy was not the motivating factor behind the decision." *Id.* ¶10.

5

claims he is "interested in taking the [AP AAS] course because it allows [him] to learn more about Black history and current issues impacting the Black community." [ECF No. 30-10 ¶ 13.] Although T.R. was never enrolled in the class, he plans to take the course if it is reinstated before he graduates. [ECF No. 34 at ¶ 19.]

J.S. is a Black junior at Spring Valley High School who is "likewise disappointed her school stopped offering AP AAS." [ECF No. 30-1 at 25.] J.S. was "eager to enroll in AP AAS for the 2024–2025 school year." *Id.* She alleges that "she would take AP AAS if given an opportunity to take it at her school and that her school was planning to offer the course before Defendant Weaver cancelled the course code." [ECF No. 53 at 11.]

### 2.  South Carolina NAACP

In addition to the individual student plaintiffs, the South Carolina State Conference of the NAACP ("South Carolina NAACP") also asserts claims. [ECF No. 30-12 ¶ 2.] The South Carolina NAACP advocates for equal access to inclusive and high-quality curricula in public education.[4] *Id.* ¶ 4. Here, it brings claims on behalf of two of its youth council members, J.C. and A.G. [ECF No. 34 ¶ 23.] These students claim to have either enrolled or planned to enroll in AP AAS and intend to take AP AAS if their schools offer it again. [ECF No. 34 at ¶¶ 232, 238.]

### 3.  Standing Analysis

While standing is relaxed in First Amendment cases, "courts may not assign it as a rubber stamp." *Justice 360 v. Stirling*, 42 F.4th 450, 458 (4th Cir. 2022) (internal citations omitted); *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019), *as amended* (Jan. 9, 2019) (noting that the injury

---

[4] Indeed, Brenda C. Murphy, President of the South Carolina NAACP, points out in her declaration that Black residents from Clarendon County, South Carolina, helped to lead a grassroots campaign for the improvement of educational facilities for Black children. Their efforts led to the case of *Briggs v. Eliott* in 1951, one of five lawsuits which culminated in *Brown v. Board of Education* in 1954. [ECF No. 30-12 ¶ 4.]

in fact element of standing is relaxed in First Amendment cases.) With this in mind, the court proceeds with the standing analysis.[5]

### a. Injury in Fact

The Supreme Court held in *Lujan* that "'someday' intentions without any description of concrete plans, or indeed even any specification of *when* some day will be—do not support a finding of the 'actual or imminent' injury" that Article III requires. *Lujan*, 504 U.S. at 564. The Court clarified:

> Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is "*certainly* impending[.]" It has been stretched beyond the breaking point when . . . the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control.

*Id.* at 564 n.2.

Plaintiffs invoke a First Amendment right to receive information, a theory whose application in the school context is, at best, unsettled.[6] And T.R. and J.S. concede they were never

---

[5] The "relaxed" standard applied to First Amendment claims is traditionally seen in the context of pre-enforcement challenges to speech-chilling statutes, where plaintiffs may sue without first violating the law and suffering a penalty. Plaintiffs, however, bring their claims against a different First Amendment backdrop—the "right to receive information." [ECF No. 34 ¶¶ 240–45.] The application of the "relaxed" standard to this type of case is unclear—but because Plaintiffs fail to satisfy the redressability requirement—the court need not resolve that question here.

[6] Courts that have addressed the theory in the public-school context have expressed significant doubt about its validity. *See Walls v. Sanders*, No. 24-1990, 2025 WL 1948450, at *4 (8th Cir. July 16, 2025) (analyzing similar right-to-receive information claim in context of public school curriculum; holding that "[j]ust as ordinary citizens cannot require the government to express a certain viewpoint or maintain a prior message, students cannot oblige the government to maintain a particular curriculum or offer certain materials in that curriculum based on the Free Speech Clause."); *see also Little v. Llano Cnty.*, 138 F.4th 834, 845 (5th Cir. 2025) (noting in context of school library, "[i]t is one thing to tell the *government* it cannot stop *you* from receiving a book. The First Amendment protects your right to do that. It is another thing for *you* to tell the

enrolled in AP AAS but merely hoped to take it if it were reinstated before they graduate. *See* ECF No. 30-10 ¶¶ 13–15; ECF No. 30-11 ¶¶ 15–18. Such speculative "future hopes" are not sufficiently concrete to establish an injury in fact, resembling the "someday" intentions the Court found insufficient in *Lujan*.

On the other hand, at least one of the student members of the South Carolina NAACP, A.G., *did* enroll in the AP AAS course but claims to have been ejected from the class once the course code was removed. *See* ECF No. 30-12 ¶ 14 ("A.G. . . . enrolled in AP AAS in the spring of 2024 for the following school year but was dismayed to learn that the State removed the course code with no prior notice of explanation."). This arguably presents a stronger case for an injury in fact since enrollment was seized and later denied due to factors outside of A.G.'s control. Assuming this is sufficient to state an injury in fact for purposes of *Lujan*, the court proceeds to analyze *Lujan*'s second and third elements.

### b. Causation and Redressability[7]

Even assuming an injury, Plaintiffs must show it is fairly traceable to the Budget Proviso and redressable by the court. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021). It must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

---

*government* which books it must keep in the library. The First Amendment does not give you the right to demand that." (citing *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853 (1982) (internal citations omitted) (emphasis in original))).

That said, because the court dismisses the right-to-receive information claims on redressability grounds, it need not address the scope or continuing viability of that doctrine.

[7] Often, as seen here, the issues of causation and redressability can be combined. Assuming Plaintiffs suffered an injury in fact, if that injury is fairly traceable to the Budget Proviso, an injunction preventing its enforcement will likely redress it. It is therefore appropriate to address these elements together. *See Massachusetts v. E.P.A.*, 549 U.S. 497, 543 (2007) (Roberts, C.J., dissenting) ("As is often the case, the questions of causation and redressability overlap."); *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024).

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000). "The burden imposed by this requirement is not onerous. Plaintiffs 'need not show that a favorable decision will relieve [their] every injury.' Rather, plaintiffs 'need only show that they personally would benefit in a tangible way from the court's intervention.'" *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 189 (4th Cir. 2018) (quoting *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018)). Declaratory and injunctive relief are appropriate to redress ongoing or future harm. *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 407–08 (6th Cir. 2019).

AP AAS was offered to the Student Plaintiffs pursuant to an advanced placement pilot program. [ECF No. 30-5.] On June 4, 2024, Ferguson released a statement notifying district superintendents that the pilot program had concluded and that SCDE had not added any new advanced placement courses to its roster for the 2024–2025 school year. *Id.*

The Student Plaintiffs argue their injuries are redressable because the Budget Proviso blocks AP AAS access. [ECF No. 53 at 12.] And they claim "high student interest and enrollment numbers support the inference that schools would again offer AP AAS if the course code were reinstated." [ECF No. 60 at 22.] The record leads the court to a different conclusion.

Ferguson's June 2024 statement clarifies that the pilot course ended for reasons beyond the Budget Proviso, including routine curriculum review unrelated to the controversy surrounding the course. Ferguson later affirmed non-Budget Proviso reasons motivated the removal. ECF No. 52-7 ¶¶ 7, 10. Further, an independent decisionmaker's discretion over course offerings also weighs against redressability. *See Stirling* 42 F.4th at 459 ("Even if we were to grant [plaintiffs] the exact relief it has requested, [defendant] would still have pure discretion over whether to provide or not provide the . . . information the organization is seeking.")

9

Even if the Budget Proviso were enjoined, SCDE's non-challenged reasons would likely continue to prevent the course from being offered. Plaintiffs' claims rest on speculation rather than concrete redressability. Since SCDE officials, both currently and at the time the course code was removed, cite(d) legitimate non-challenged grounds for ending the pilot program, the court finds that the Student Plaintiffs, if injured, fail to show that their injuries are fairly traceable to the Budget Proviso or that a favorable decision from this court would redress their injuries. Accordingly, their claims fail for lack of standing.

### B. Ibram X. Kendi

Ibram X. Kendi ("Kendi") is an author who has published many books for adults and children, as well as academic essays addressing racial issues in America. [ECF No. 30-2 ¶¶ 1–3.] In 2020, Kendi was named one of the most influential people in the world by *Time Magazine*. *Id.* Among his works is *Stamped*: *Racism, Antiracism, and You* ("*Stamped*"). *Stamped* addresses the origins of racist and antiracist ideas in the United States. *Id.* ¶ 5. Kendi notes the book was written with young adult readers in mind and was designed to help them discuss racial ideas. *Id.* ¶ 6. To that end, many classrooms, according to Kendi, used *Stamped* as a teaching aid. *Id.*

On November 30, 2022, Lexington County School District Three recommended removing *Stamped* from school circulation. [ECF No. 30-3 at 2.] The reviewing committee found *Stamped* contained "inaccuracies and lack of objectivity contrary to the purpose of a nonfiction text source" and that this conflicted with the Materials Selection Criteria promulgated by SCDE.[8] *Id.*

---

[8] During the period relevant to this suit, SCDE maintained a formal policy governing the selection and adoption of library materials. [ECF No. 30-3 at 6.] This policy contained ten factors which should be considered when deciding whether material should be removed. Among these factors, factor six requires an evaluation of the "validity, accuracy, objectivity, currency, and appropriateness of text." *Id.*

Kendi offers evidence that at least one reviewing member thought that keeping *Stamped* in circulation would violate the Budget Proviso:

> I have read this book and would have to respond that the book constantly presents the analogy that being white equals racism. This thought would be adverse to the state requirement that books under the theme SCE: Partisanship Curriculum[9] item number 2 – an individual, by virtue of his race or sex, is inherently racist, sexist, or oppressive, whether consciously or unconsciously[.]

[ECF No. 30-3 at 4–5.]

Subsequently, *Stamped* was removed from school libraries and classrooms in Lexington County School District Three ("District Three"). Kendi claims to have suffered personal, professional, and reputational harm because of the book's removal. [ECF No. 30-2 ¶ 17.] He further alleges readership of the book has declined, as his work has since been labeled as divisive and harmful. *Id.* ¶ 18. Kendi asserts he has had to hire lawyers, consultants, and communications specialists to correct notions that he or his work are racist or "anti-white." *Id.* ¶ 19. He claims District Three violated his First Amendment rights by banning *Stamped*. *See* ECF No. 34 ¶ 265.

### 1. Redressability

Standing requires three irreducible elements: an injury in fact, a causal connection between the injury and the conduct complained of, and redressability. Failure to meet any of these elements is fatal to a claim. *See id.*

Even assuming Kendi suffered an injury in fact and his injury is fairly traceable to the Budget Proviso, he has failed to demonstrate that his injury would likely be redressed by a favorable decision. Kendi claims that his injury is redressable because "enjoining the budget proviso, which the District relies upon to remove the book, will rescind all justification for the ban

---

[9] "Partisanship Curriculum" was the label applied to the Budget Proviso during the legislative process. ECF No. 30-1 at 12–13; H. 4100, 124th Gen. Assemb. (S.C. 2021).

on *Stamped*." [ECF No. 53 at 20.] But District Three's removal recommendation explicitly cites the Materials Selection Criteria as its basis.[10] [ECF No. 30-3 at 2.]

Generally, a plaintiff injured by one law lacks standing to challenge a separate law. *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 301 (2022). When two laws independently prohibit the same conduct, invalidating only one law does not establish standing because the injury persists under the other. *See Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018); *Delta Constr. Co. v. E.P.A.*, 783 F.3d 1291, 1296–97 (D.C. Cir. 2015) (per curiam) ("[E]ven were we to vacate the EPA standards, the NHTSA standards would still increase the price of vehicles. Accordingly, [] Petitioners cannot demonstrate . . . that a favorable decision by this court would redress [their injury].") Simply put, a favorable ruling must eliminate a cause of injury to satisfy redressability, not merely one of multiple independent causes. *See Fischer v. Governor of New Jersey*, 842 F. App'x 741, 751 n.11 (3d Cir. 2021); 15 *Moore's Federal Practice: Civil* § 101.42 (2020) ("[T]he redressability element [of Article III standing] is not satisfied if a favorable result would eliminate one of multiple causes of an injury without actually decreasing the injury at all.").[11]

---

[10] The assumption that the Budget Proviso was a basis for removal is not a small one. Kendi provides only one page of typed notes from an anonymous reviewing member to support this conclusion. These notes reflect only the unnamed member's perspective and mention the Budget Proviso only once. [ECF No. 30-3 at 4 ("*I* have read the book . . . the following are notes *I* took to support *my decision*") (emphasis added).]

Further, each member of the reviewing committee for *Stamped* filed separate declarations affirming that each of their decisions to remove *Stamped* from circulation was based on their evaluation of its factual or historical veracity, accuracy, and completeness. [ECF Nos. 52-1 through 52-5.] But even assuming the Budget Proviso *was* an official basis for removal, the court's conclusion remains the same due to the redressability issues addressed below.

[11] This case can also be distinguished from the Fourth Circuit's reasoning in *Sierra Club* that "the removal of even one obstacle to the exercise of one's rights, even if other barriers remain, is

Applied here, even if the court were to strike down or enjoin enforcement of the Budget Proviso as Kendi requests, *Stamped* would likely remain out of circulation due to the independent review committee's findings under the Materials Selection Criteria. *See* ECF No. 30-3 at 2. Because an independent, non-challenged action causes the same alleged harm, Kendi is unable to show that a favorable decision by this court would likely provide relief. Accordingly, he too lacks standing, and his claims fail as a matter of law.

### C.  Ayanna Mayes and Mary Wood (the "Educator Plaintiffs")

#### 1.  Ayanna Mayes

Ayanna Mayes ("Mayes") is a high school librarian in Lexington and Richland School District Five ("District Five"). [ECF No. 24 ¶ 109.] Before the Budget Proviso went into effect, she claims to have curated an optional "Book of the Month" club selecting and promoting books for students to read each month. *Id.* ¶ 182. According to Mayes, she often selected books addressing topics like race and gender discrimination, but, since the Proviso's enactment, Mayes claims she no longer advertises the club, fearing "students and peers will report her to the school district for violating the law." *Id.*

---

sufficient to show redressability." 899 F.3d at 285 (citing *Larson v. Valente*, 456 U.S. 228, 242–43 (1982)). Again, even assuming the Budget Proviso was *a* reason for *Stamped* being removed from circulation, the SCDE Material Selection Criteria remain an independent, unchallenged ground for removal. Accordingly, enjoining the Budget Proviso's enforcement would bring Kendi no closer to bringing *Stamped* back into circulation.

For these same reasons, Kendi has failed to meet the Supreme Court's requirement that he show a "'predictable chain of events' that that would likely result from judicial relief and redress the plaintiff's injury." *Diamond Alt. Energy, LLC v. Env't Prot. Agency*, 145 S. Ct. 2121 (2025) (quoting *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367 (2024)). His contention that removing the Budget Proviso would "rescind all justification for the ban on *Stamped*" ignores the other, nonchallenged grounds for removal—*i.e.*, the Materials Selection Criteria.

13

She further asserts that the Budget Proviso caused her to cancel several other library initiatives, including trivia events and a free book table, out of caution. *Id.* ¶ 107. Mayes argues she has faced harassment, heightened scrutiny, and negative attention—specifically from parents—due to the Budget Proviso. *Id.* ¶ 109. She also claims that District Five increased scrutiny of her work after the Budget Proviso was enacted. *Id.* ¶ 98.

### 2. Mary Wood

Mary Wood ("Wood") is an AP English Language and Composition teacher in District Five. [ECF No. 9 ¶17.] Her course includes an assignment on argumentative essay writing about systemic racism. *Id.* She alleges her school required her to cancel and later modify her lesson plan due to the Budget Proviso. *Id.*

Wood states some of her students reported her lesson plans to district authorities for violating the Budget Proviso, and that on March 6, 2023, she received a letter of reprimand from the school principal. *Id.* ¶ 112. She argues numerous parents have attacked her at school board meetings, with some parents calling for adverse employment actions against her. *Id.*

Responding to public backlash, Wood cancelled multiple segments of her lesson plans for fear of reprisal. *Id.* ¶ 113. She says District Five has not given her enough guidance under the Budget Proviso and she has thus been forced to teach in fear that her district will one day accuse her of violating it. *Id.* ¶¶ 113–116.

### 3. Applicable Law

The Educator Plaintiffs challenge the Budget Proviso under the Fourteenth Amendment's Equal Protection and Due Process Clauses. [ECF No. 34.] To proceed, they must establish Article III standing. *John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 628 (4th Cir. 2023).

The risk of future injury may satisfy injury in fact "if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up). That said, the risk of future injury "must be substantial, not just conceivable." *Montgomery Cnty.*, 78 F.4th at 628; *See also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013) ("In the past, we have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment."). Claims depending on "speculative fear" and uncertainty as to what enforcing officials may do at some future time are too attenuated to create an injury in fact for purposes of standing. *See Montgomery Cnty.*, 78 F.4th at 631 ("[Plaintiffs'] claims likewise depend on a speculative fear, the occurrence of which requires guesswork as to actions of others."); *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 302 (1979) (fears of enforcement that are "imaginary or wholly speculative" are insufficient to confer standing).

Conversely, an imminent injury exists when a plaintiff alleged intends to engage in conduct arguably protected but proscribed by law and faces a credible threat of prosecution. *Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018) (quoting *Babbitt* 442 U.S. at 298). To that end, "[i]t is not necessary that [a plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).

### a. Injury in Fact

Like the Plaintiffs in *Clapper* and *Montgomery County*, the Educator Plaintiffs lack standing. Mayes's preemptive cancellation of library initiatives "for fear of violating the Budget Proviso" is precisely the sort of speculative, self-imposed conduct that *Montgomery County* deemed inadequate to establish injury in fact; indeterminate fear of possible future discipline does not establish injury. *Id.* at 630. ("[S]tanding requires either a current injury, a certainly impending

15

injury or substantial risk of a future injury.") Mayes fails to allege that the Budget Proviso ever required, much less compelled, her to act during the time relevant to this suit.[12] Her actions, motivated by precaution, do not constitute injury in fact.

Wood fares no better.[13] Although concerned that her teaching might violate the Proviso, she does not allege any disciplinary action, or credible threat of disciplinary action, taken against

---

[12] To be sure, Mayes alleges that the principal in her school told her to alter, and later remove, a flyer advertising a library initiative because it allegedly evidenced "bias and [was] not showing 'both sides' of the issue." [ECF No. 30-9 ¶15.] Still, she fails to identify a legally protected interest in how library initiatives are advertised. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("injury-in-fact" requires invasion of legally protected interest). Nor does she claim to have suffered any professional consequences due to the Budget Proviso, only that she fears such consequences. [ECF No. 30-9 ¶ 14.] Accordingly, Mayes allegations regarding various library initiatives are unpersuasive.

[13] To bolster her argument for standing, Wood relies on *Tennessee Education Association v. Reynolds*, 732 F. Supp. 3d 783 (M.D. Tenn. 2024). That case concerned a similar law which was also based on Executive Order No. 13950. *See id.* at *3 n.1. Wood looks to the court's opinion at the motion to dismiss stage, where the court then held:

> The teachers' injuries arising out of the responsibility to teach in accordance with the Act and their risk of discipline under the Rules are sufficient to afford standing, and the question of whether any portion of the Act should be spared from injunctive relief, if the plaintiffs succeed, is not yet before the court. *Id*. at 805.

One of the plaintiffs in that case was a teacher who claimed a similar ban on divisive concepts imposed an "enormous burden every day," because she was "always questioning [whether she was] going to run afoul of the law or not." She also noted that "it's impossible to have an impartial discussion about some of the [Prohibited Concepts] because they are controversial." *Tenn. Educ. Ass'n v. Reynolds*, No. 3:23-CV-00751, 2025 WL 1145260 (M.D. Tenn. Apr. 17, 2025). Later, at the motion for summary judgment stage, the court determined that the teacher lacked standing:

> The non-existence of any history of past enforcement (despite the law's having passed nearly four years ago and the filing of numerous complaints at the local level), the lack of warning letters, and the absence of any strong statutory attributes making enforcement particularly easy, considered together, lead the court to conclude that the individual plaintiffs lack standing to challenge the Ban. The plaintiffs simply have not established that the "'surrounding factual circumstances'

16

her.[14] In fact, the record shows she remains employed and in good standing with her district. *See* ECF No. 49 at 12 ("District Five has not taken any adverse employment actions against her, and it has no intent to do so."); ECF No. 49-1 ¶ 18. ("No adverse employment actions will be taken as to Ms. Wood or Ms. Mayes as a result of this lawsuit or the allegations contained in it."). Her subjective fears of possible future disciplinary actions are insufficient to establish a concrete injury.

Lastly, both Educator Plaintiffs claim to have faced public criticism because of the Budget Proviso. *See* ECF No. 30-1 at 21–24 (noting "[m]ultiple parents demanded [Wood's] termination or other professional consequences during a school board meeting" and that "parents [have] complained that books in [Mayes'] library violate the Budget Proviso"). But even if public criticism were an injury, they fail to show causation or redressability.

They rely on the Supreme Court's reasoning in *Dep't of Com. v. New York*, 588 U.S. 752 (2019), claiming that *Lujan*'s traceability element is met because members of the public "react in predictable ways" to the Budget Proviso's vague language. [ECF No. 53 at 27.] But they do not

---

plausibly suggest a credible fear of enforcement." *Id.* at *13. (quoting *Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826 (6th Cir. 2024).

Since Wood suffers from the same standing deficiencies as the plaintiffs in *Reynolds*, the court finds her arguments based on that case unpersuasive.

[14] Wood claims to have received a "reprimand letter" from her principal in March 2023 "demanding that [she] not retaliate against any student that had reporter [her] course, or speak to anyone in any way or speak to anyone in any way that would lead them to believe that [she] presented 'both sides,' or suggest that [she] was reprimanded without warrant." [ECF No. 30-7 ¶ 14.] Setting aside the fact that the alleged reprimand did not occur while the challenged Budget Proviso was in effect, she fails to allege that it occurred because of the Budget Proviso. Rather, Wood makes clear she fears professional consequences under the Budget Proviso, not that they have actually been imposed. *Id.* ¶ 28. Accordingly, the supposed "reprimand letter" fails to establish an injury in fact.

demonstrate how the Budget Proviso caused public criticism or how a favorable ruling would suppress it. Accordingly, this argument likewise fails.

Because the Educator Plaintiffs have failed to establish an injury in fact, the court lacks jurisdiction and their claims are dismissed.

### IV.     Conclusion

The court recognizes that the issues raised are matters of public importance. But because Plaintiffs lack standing, the Constitution leaves their resolution to the democratic process rather than the federal courts. Plaintiffs' motion for preliminary injunction, ECF No. 30, is **DENIED** and Defendants' motions to dismiss, ECF Nos. 49 & 51, are **GRANTED**.

**IT IS SO ORDERED.**

September 8, 2025
Columbia, South Carolina

Sherri A. Lydon
United States District Judge