**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 25-2216**

———————————

SOUTH CAROLINA STATE CONFERENCE OF THE NAACP; IBRAM X. KENDI;
T.R., a minor by and through their father and next friend, Todd Rutherford; J.S., a minor
by and through their mother and next friend, Amanda Bradley,

       Plaintiffs – Appellants,

  and

MARY WOOD; AYANNA MAYES,

       Plaintiffs,

    v.

ELLEN WEAVER, in her official capacity as South Carolina Superintendent of
Education; LEXINGTON COUNTY SCHOOL DISTRICT THREE,

       Defendants – Appellees,

  and

SCHOOL DISTRICT FIVE OF LEXINGTON AND RICHLAND COUNTIES,

       Defendant.

------------------------------

STATE OF SOUTH CAROLINA AND 20 OTHER STATES,

       Amicus Supporting Appellees.

———————————

Appeal from the United States District Court for the District of South Carolina, at
Columbia.  Sherri A. Lydon, District Judge.  (3:25-cv-00487-SAL)

———————————

Argued:  May 5, 2026                                          Decided:  July 7, 2026

---

Before NIEMEYER, GREGORY, and AGEE, Circuit Judges.

---

Affirmed in part, reversed in part, vacated in part, and remanded with instructions by published opinion.  Judge Agee wrote the opinion, in which Judge Niemeyer and Judge Gregory joined.

---

**ARGUED:** Charles Edward McLaurin, NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC., Washington, D.C., for Appellants.  Miles Edward Coleman, NELSON MULLINS RILEY & SCARBOROUGH LLP, Greenville, South Carolina, for Appellees. **ON BRIEF:** Jin Hee Lee, Kacey Mordecai, Jason P. Bailey, Washington, D.C., Kevin E. Jason, NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC., New York, New York; Tyler D. Bailey, BAILEY LAW FIRM, LLC, Columbia, South Carolina; Debo P. Adegbile, Thais R. Ridgeway, New York, New York, Molly Calhoon Silva, WILMER CUTLER PICKERING HALE AND DORR LLP, Los Angeles, California, for Appellants. William A. Neinast, NELSON MULLINS RILEY & SCARBOROUGH LLP, Greenville, South Carolina, for Appellees.  Alan Wilson, Attorney General, Thomas Hydrick, Solicitor General, Joseph D. Spate, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Amicus State of South Carolina.  Steve Marshall, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF ALABAMA, Montgomery, Alabama, for Amicus State of Alabama.  Stephen J. Cox, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF ALASKA, Anchorage, Alaska, for Amicus State of Alaska.  Tim Griffin, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF ARKANSAS, Little Rock, Arkansas, for Amicus State of Arkansas.  James Uthmeier, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF FLORIDA, Tallahassee, Florida, for Amicus State of Florida.  Chris Carr, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF GEORGIA, Atlanta, Georgia, for Amicus State of Georgia.  Raúl Labrador, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF IDAHO, Boise, Idaho, for Amicus State of Idaho.  Theodore E. Rokita, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF INDIANA, Indianapolis, Indiana, for Amicus State of Indiana.  Brenna Bird, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF IOWA, Des Moines, Iowa, for Amicus State of Iowa.  Kris Kobach, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF KANSAS, Topeka, Kansas, for Amicus State of Kansas.  Liz Murrill, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF LOUISIANA, Baton Rouge, Louisiana, for Amicus State of Louisiana. Catherine Hanaway, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MISSOURI, Jefferson City, Missouri, for Amicus State of Missouri. Austin Knudsen, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MONTANA, Helena, Montana, for Amicus State of Montana.  Michael T. Hilgers,

2

Attorney General, OFFICE OF THE ATTORNEY GENERAL OF NEBRASKA, Lincoln, Nebraska, for Amicus State of Nebraska.  Drew Wrigley, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF NORTH DAKOTA, Bismarck, North Dakota for Amicus State of North Dakota.  Gentner Drummond, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF OKLAHOMA, Oklahoma City, Oklahoma, for Amicus State of Oklahoma.  Marty Jackley, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF SOUTH DAKOTA, Pierre, South Dakota, for Amicus State of South Dakota.  Jonathan Skrmetti, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF TENNESSEE, Nashville, Tennessee, for Amicus State of Tennessee.  Ken Paxton, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF TEXAS, Austin, Texas, for Amicus State of Texas.  Derek Brown, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF UTAH, Salt Lake City, Utah, for Amicus State of Utah.  John B. McCuskey, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Amicus State of West Virginia.

———————————

AGEE, Circuit Judge:

A South Carolina budget provision (the "Proviso") prohibits public schools from using state funds to teach certain race-related concepts. Several Black high school students, the South Carolina State Conference of the NAACP ("SC NAACP"), and author Ibram Kendi (collectively, "Plaintiffs"), brought this lawsuit to enjoin enforcement of the Proviso. Relevant here, the students and SC NAACP allege that Ellen Weaver, South Carolina's Superintendent of Education, relied on the Proviso to not offer an Advanced Placement African American Studies ("AP AAS") course. And they also allege that the removal of that course from the State's curriculum, in turn, violates a right to receive information under the First Amendment. Kendi, for his part, brings a First Amendment viewpoint discrimination claim against Lexington County School District Three ("District Three"), based on its decision—allegedly to comply with the Proviso—to remove one of his books from public school libraries in that district. Plaintiffs also allege that the Proviso is void for vagueness under the First Amendment and that it violates the Equal Protection Clause of the Fourteenth Amendment. The district court dismissed Plaintiffs' complaint after concluding that none of them have Article III standing.

We reach a different conclusion. One of the individual student plaintiff's claims is now moot because she has graduated from high school, so we affirm the dismissal as to her. Another student has failed to allege a sufficient injury in fact to challenge the removal of AP AAS, so we affirm the dismissal of the right-to-receive-information claim as applied to him. For SC NAACP, however, we conclude that it has adequately alleged that at least one of its student members would have standing to sue in her own right. But because the

district court did not address the remaining requirements for SC NAACP to demonstrate representational standing, we vacate the dismissal of its right-to-receive-information claim and remand for further proceedings. We likewise hold that Kendi has adequately alleged standing to pursue his viewpoint discrimination claim and therefore reverse the dismissal of that claim. Finally, because the district court did not consider standing as to the remaining claims, we vacate the dismissal of those claims as well and remand for further proceedings.

## I.

This is an appeal of the grant of a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, so we accept as true the facts alleged in the amended complaint and construe those facts in the light most favorable to Plaintiffs. *Menders v. Loudoun Cnty. Sch. Bd.*, 65 F.4th 157, 160 (4th Cir. 2023).

### A.

Since 2021, South Carolina's annual budget has included the Proviso—labeled "SDE: Partisanship Curriculum"—that prohibits the use of state funds to teach various concepts related to race and sex. *See* H. 5100, 2024–2025 Gen. Assemb., 125th Sess., Part 1B § 1.79 (S.C. 2024).[1] The prohibited concepts include, for instance, that "an individual, by virtue of his race or sex, is inherently racist, sexist, or oppressive, whether consciously

---

[1] The Proviso was included in the 2025–2026 South Carolina budget, *see* H. 4025, 2025–2026 Gen. Assemb., 126th Sess., Part 1B § 1.78 (S.C. 2025), and is part of the proposed 2026–2027 budget to be voted on this summer, *see* H. 5126, 2025–2026 Gen. Assemb., 126th Sess., Part 1B § 1.75 (S.C. 2026).

or unconsciously," § 1.79(2); "an individual, by virtue of his race or sex, bears responsibility for actions committed in the past by other members of the same race or sex," § 1.79(5); and "an individual should feel discomfort, guilt, anguish, or any other form of psychological distress on account of his race or sex," § 1.79(6).

## B.

Plaintiffs challenge the constitutionality of the Proviso on several grounds. Broadly speaking, several Black high school students and the SC NAACP, on behalf of its student members, (the "Student Plaintiffs") assert claims arising from curriculum changes resulting from Weaver's alleged enforcement of the Proviso. Kendi's claims are largely based on the Proviso allegedly leading to the removal of one of his books from school libraries in District Three.[2]

## 1.

Beginning in the 2022–2023 school year, the College Board[3] implemented a pilot program for AP AAS, a high school "course that offers students a rich, evidence-based

---

[2] The amended complaint also included Fourteenth Amendment claims brought by South Carolina public school teachers. The district court dismissed those claims, and those claims are not at issue on appeal. *See* Opening Br. 5 n.1.

[3] The College Board is a "not-for-profit membership organization" that has "pioneered programs like the SAT® and AP® to expand opportunities for students and help them develop the skills they need." College Board, *About Us*, https://about.collegeboard.org/ [https://perma.cc/B9EQ-CQ6J] (last visited June 4, 2026). Like other states, South Carolina requires its high schools to offer AP courses developed by the College Board. *See* S.C. Code Ann. Regs. 43-234 Sec. V(B)(1); *see also* S.C. Code Ann. Regs. 43-258.1. AP courses are developed independent of the State, "by the College Board with prescribed curricula and tests for which students receive high school credit" and—if they score well enough on the College-Board administered test at the end of the course—college credit. S.C. Code Ann. Regs. 43-258.1(I). *Cf. Bradley v. Jeferson Cnty.* (Continued)

6

education about the history and experiences of Black people throughout American and South Carolinian history to the present day." J.A. 216 ¶ 184.

In the first year of the program, AP AAS was offered in sixty schools nationwide, including at least one high school in South Carolina. The next school year, South Carolina offered the course to students in at least twelve schools statewide. As the 2023–2024 school year came to a close and students were enrolling in courses for the next school year, C. Matthew Ferguson, the South Carolina Department of Education's ("SCDE") Deputy Superintendent and Chief Academic Officer, notified local superintendents and instructional leaders in a memorandum ("Ferguson Memo") that SCDE was removing AP AAS's "course code" for the 2024–2025 school year.[4] Explaining the removal, the Ferguson Memo cited the "significant controversy surrounding the course concerning issues directly addressed by South Carolina's General Assembly in a budget proviso as well as in pending permanent legislation" and an approaching "routine cyclical review" of the "state's social studies standards[.]" J.A. 95; *see also* J.A. 231–32 ¶ 227.

The decision not to offer the AP AAS course was "unexpected and abrupt," leaving students and educators "confused," and prompting some to describe the explanation as "deliberately misleading." J.A. 233 ¶ 232. Others questioned SCDE's reliance on the social

---

*Pub. Schs.*, 88 F.4th 1190, 11196 (6th Cir. 2023) ("[C]ollege credit for an AP class turns on a college's policies and on the student's performance on the AP test administered by the College Board, an organization separate from Kentucky's postsecondary system that oversees the AP curriculum and examinations.").

[4] Although local school districts have discretion to choose which courses will be offered in their schools, they may only choose from courses approved by the SCDE with a listed course code.

studies standards review, which was not scheduled to begin for another sixteen months, and from which any resulting new standards likely wouldn't be implemented until at least the 2026–2027 school year.

The Ferguson Memo clarified that local school districts remained free to offer AP AAS "as a locally-approved honors course." J.A. 95. Plaintiffs contend that those honors courses are not the same as the AP course and lack the "comprehensive[ness]" and "academic rigor" of "nationally standardized AP courses," omitting content that AP AAS includes to "fill[] in historical gaps in the Honors coursework." J.A. 218–19 ¶ 190. Plaintiffs also allege that AP courses carry greater weight in determining a student's grade point average, and although students in honors courses may still take the AP exam, SCDE pays the exam fee only for students enrolled in the AP course.

Individual plaintiffs T.R. and J.S. are Black students at South Carolina high schools that were offering AP AAS until SCDE removed the course code. When the amended complaint was filed in March 2025, T.R. was a sophomore, and J.S. was a junior. Both allege an interest in taking AP AAS, and J.S.'s mother emailed her guidance counselor to enroll J.S. in the course for the 2024–2025 school year. T.R. alleges he would take AP AAS if the course becomes available; J.S., on the other hand, graduated from high school in May 2026.

A.G. is not an individual plaintiff and is relevant only in determining whether SC NAACP has representational standing. She is a student member of SC NAACP and was a high school freshman when the complaint was filed. She, too, goes to a South Carolina high school that offered AP AAS and was actually enrolled in the course for the upcoming

school year, but was unable to take it when the course code was rescinded. A.G. alleges she would enroll in the course in the future if it became available.

2.

Kendi is the co-author of *Stamped: Racism, Antiracism, and You*, a book that "describes and deconstructs the history of racist thought in the United States and encourages young readers to have developmentally appropriate conversations about race and inequality." J.A. 210 ¶ 161. According to the amended complaint, the book "is intended to address the ongoing discrimination that Black people continue to experience in the United States." J.A. 212 ¶ 168. The book has received numerous honors, including recognition as a #1 *New York Times* and *Wall Street Journal* bestseller, the *Washington Post*'s Best Children's Book of the Year, and one of *TIME Magazine*'s Ten Best Children's and Young Adult Books of the Year, among others.

District Three removed *Stamped* from its schools and libraries in Fall 2022, after its materials review committee[5] "recommended the formal removal of *Stamped* from circulation in the district." J.A. 211 ¶ 164. Notes alleged to be from committee members related to the removal of *Stamped* observed that the book is "adverse" to the Proviso, which prohibits using state funds to teach that "an individual, by virtue of his race or sex, is inherently racist, sexist, or oppressive, whether consciously or unconsciously." *Id.* ¶ 165; *see also* J.A. 80. In a letter reporting the committee's recommendation, Angie Rye, District Three's Chief Academic Officer, explained that *Stamped* is a nonfiction book, but the

---

[5] The materials review committee included a media specialist, an English/language arts teacher, a principal, a community member, and another district staff member.

review committee "noted examples of information that is author opinion or conjecture" "throughout the book." J.A. 78; *see also* J.A. 211 ¶ 165. Citing the States' Materials Selection Criteria, the committee recommended removing the book because of its purported "inaccuracies and lack of objectivity[.]" J.A. 78.

Between August 2022 and November 2023, "*Stamped* was the only book reviewed and removed by School District Three." J.A. 212 ¶ 166.

## C.

Plaintiffs sued Weaver and District Three, alleging that the Proviso violates their First and Fourteenth Amendment rights. Shortly after filing suit, Plaintiffs moved to preliminarily enjoin enforcement of the Proviso and require (1) Weaver to reinstate the AP AAS course code for the next school year, and (2) District Three to return *Stamped* to circulation in all areas where it was previously available.

Plaintiffs then filed the now-operative five-count amended complaint. The Student Plaintiffs raise a First Amendment right-to-receive-information claim against Weaver (Count One), alleging that the Proviso is: (1) facially unconstitutional as it prohibits "educators from teaching specific concepts about race and racism in public schools," J.A. 238 ¶ 244; and (2) unconstitutional as applied to them because Weaver's decision to cancel AP AAS, allegedly to comply with the Proviso, denied them access to information they would have received from the course. Kendi alleges that School District Three's removal of *Stamped* was First Amendment viewpoint discrimination, as it interfered with his ability to have his books available to readers because of his viewpoint (Count Two). Plaintiffs also raise a Fourteenth Amendment void-for-vagueness claim (Count Three) and

two equal protection claims: discriminatory intent and effect (Count Four) and selective enforcement (Count Five).

Defendants moved to dismiss the amended complaint, arguing that Plaintiffs lacked standing under Rule 12(b)(1) and failed to state a claim upon which relief can be granted under Rule 12(b)(6). After the district court heard arguments—but didn't take evidence—on the motions for a preliminary injunction and to dismiss, it concluded that Plaintiffs lacked standing. It therefore granted Defendants' Rule 12(b)(1) motion and (without separate analysis) "denied" Plaintiffs' preliminary injunction motion. The district court did not rule on the Rule 12(b)(6) motion.

Beginning with the Student Plaintiffs, the district court concluded that T.R. and J.S. had not alleged a concrete injury because "they were never enrolled in AP AAS but merely hoped to take it if it were reinstated before they graduate." J.A. 973–74. The court viewed A.G., the student member of the SC NAACP, differently. Because A.G. had enrolled in the course and alleged that she was "ejected from the class once the course code was removed[,]" the court concluded that she "arguably present[ed] a stronger case for an injury in fact." *Id.* Based on the assumption that A.G. had sufficiently alleged an injury, the district court went on to assess the other standing elements, traceability and redressability, as to her.[6] There, it relied on the Ferguson Memo, which the court understood to explain that AP

---

[6] As noted, A.G. isn't an individual plaintiff, but an identified student member of Plaintiff SC NAACP, which seeks to bring suit on behalf of A.G. and other student members. As we discuss below, to do so, SC NAACP must have representational standing, which has three requirements. The district court implicitly dealt with the first one—that the organization's members would have standing to sue on their own—as it relied on A.G. to
(Continued)

AAS was discontinued not only because of the Proviso but also because of an upcoming "routine curriculum review." J.A. 975. The district court considered that review to be an independent, "non-challenged" basis for ending the course and concluded that AP AAS likely would not be reinstated even if enforcement of the Proviso was enjoined. J.A. 976. The court thus concluded that A.G. failed to establish traceability and redressability, and that all the Student Plaintiffs' "claims fail for lack of standing." *Id.* The court, however, didn't address their facial challenge to the Proviso.

As for Kendi, the district court assumed that the removal of *Stamped* was an injury in fact traceable to the Proviso but concluded that he failed to establish redressability. The court reasoned that District Three had relied not only on the Proviso but also on the State's Materials Selection Criteria in recommending the book's removal. Because Kendi didn't challenge District Three's reliance on the Criteria, the court concluded that even if it were to enjoin the Proviso, Kendi's injury wasn't redressable because the Materials Selection Criteria, a separate and independent basis, "causes the same alleged harm." J.A. 979.

Having concluded that Plaintiffs "lack[ed] standing," the district court granted Defendants' 12(b)(1) motion dismissing the case for lack of jurisdiction and "denied" the preliminary injunction. J.A. 984. It did so without addressing Plaintiffs' other claims or any of the 12(b)(6) arguments.

Plaintiffs timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

---

assess the Student Plaintiffs' standing. But after determining that A.G. would not have standing, it did not address the other prongs necessary to establish representational standing.

3:25-cv-00487-SAL    Date Filed 07/08/26    Entry Number 103    Page 13 of 35

II.

We review a district court's dismissal for lack of standing de novo. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 207 (4th Cir. 2017).

A.

Article III of the Constitution limits federal courts' authority to decide only "Cases" and "Controversies." U.S. Const. art. III, § 2; *see Sheppheard v. Morrisey*, 143 F.4th 232, 242 (4th Cir. 2025). To fulfill the case-or-controversy requirement, a plaintiff must have standing—a "personal stake" in the suit she brings. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *see John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 628 (4th Cir. 2023) ("A dispute is not a case or controversy if the plaintiff lacks standing."). To satisfy the "irreducible constitutional minimum of standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 187 (4th Cir. 2018) (cleaned up).

An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). A "concrete" injury "must actually exist[,]" meaning that it is "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (cleaned up). And for an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). Because Plaintiffs only seek prospective equitable relief, not monetary damages for a past harm, they must "demonstrat[e] 'a sufficiently

13

imminent injury in fact' or . . . 'an ongoing injury.'" *Deal*, 911 F.3d at 189 (quoting *Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018)).

Article III also demands that a plaintiff's injury be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (cleaned up). Traceability "does not require the challenged action to be the sole or even immediate cause of the injury." *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is not a requirement of Article III standing[.]"). It's enough to show that the challenged conduct "is at least in part responsible" for a plaintiff's injury. *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 316 (4th Cir. 2013).

Last, to satisfy standing's redressability element, a plaintiff must allege that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Svcs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). This "burden . . . is not onerous." *Deal*, 911 F.3d at 189. A plaintiff "need not show that a favorable decision will relieve [her] every injury. *Sierra Club*, 899 F.3d at 284 (cleaned up). She "need only show that [she] personally would benefit in a tangible way from the court's intervention." *Id.* (cleaned up).

These principles guide the standing analysis for *individual* plaintiffs, but an organization like SC NAACP must satisfy representational standing to bring a claim on behalf of its members. To do so, "an organization must allege that (1) its own members would have standing to sue in their own right; (2) the interests the organization seeks to

14

protect are germane to the organization's purpose; and (3) neither the claim nor the relief sought requires the participation of individual members in the lawsuit." *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (cleaned up). As part of that showing, an organization must "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009).

"The party invoking federal jurisdiction bears the burden [to prove standing]." *See Lujan*, 504 U.S. at 561. And like any other issue for which the plaintiff bears the burden of proof, "each element [of standing] must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Id.* At the motion-to-dismiss stage, a defendant can challenge standing "in one of two ways: facially or factually." *Wikimedia Found.*, 857 F.3d at 208 (quoting *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017)).

A defendant mounting a facial challenge "contends that the complaint fails to allege facts upon which standing can be based, and the plaintiff is afforded the same procedural protection that exists on a motion to dismiss." *Id.* (cleaned up). In that situation, we take the allegations in the complaint as true, *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982), and construe them in the light most favorable to the plaintiff, *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013).[7]

---

[7] In a factual challenge, the defendant argues "that the jurisdictional allegations of the complaint are not true." *Wikimedia Found.*, 857 F.3d at 208 (cleaned up). When defending against a factual challenge, the plaintiff "is afforded less procedural protection." (Continued)

In this case, Defendants' 12(b)(1) motion to dismiss lodged a facial challenge to Plaintiffs' standing.

B.

Initially, we resolve a threshold jurisdictional issue as to one of the individual Student Plaintiffs: whether J.S.'s claims became moot after her recent graduation from high school. Mootness is another offshoot of Article III's case-or-controversy requirement. "[A]n actual controversy must be extant at all stages of review[.]" *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). Even if a plaintiff has standing at the beginning of a lawsuit, if the facts on the ground change such that "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome[,]" then her claims are moot. *Robinson v. Nat'l Collegiate Athletic Ass'n*, 172 F.4th 271, 282 (4th Cir. 2026) (cleaned up). Like standing, mootness is a jurisdictional issue that the court may raise sua sponte at any stage. *United States v. Springer*, 715 F.3d 535, 540 (4th Cir. 2013).

"When students challenge the constitutionality of school policies, their claims for declaratory and injunctive relief generally become moot when they graduate." *Mellen v. Bunting*, 327 F.3d 355, 364 (4th Cir. 2003); *see also Bd. of Sch. Comm'rs of Indianapolis v. Jacobs*, 420 U.S. 128, 129 (1975) (per curiam) (holding that once "all of the named plaintiffs in the action had graduated . . . a case or controversy no longer exist[ed]"); *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000) (similar).

---

*Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Once the defendant undermines the veracity of the underlying jurisdictional facts, "[a] trial court may then go beyond the allegations of the complaint *and in an evidentiary hearing* determine if there are facts to support the jurisdictional allegations." *Id.* (emphasis in original) (cleaned up).

3:25-cv-00487-SAL    Date Filed 07/08/26

J.S., one of the Student Plaintiffs, was a junior in high school when the amended complaint was filed in March 2025. Shortly after we heard argument, J.S. graduated from high school. Plaintiffs' May 29, 2026 Ltr., Dkt. No. 57, at 1 (confirming that "J.S. graduated from [high school] on May 20, 2026"). Because J.S., like all other plaintiffs here, seeks only prospective declaratory and injunctive relief relating to her status as a high school student, we conclude that even if she had standing when the complaint was filed, her claims are now moot. We thus affirm the district court's dismissal as to J.S.[8]

C.

We now address whether the remaining Student Plaintiffs—T.R. and SC NAACP— have adequately alleged standing to pursue their as-applied First Amendment right-to-receive-information claim against Weaver. Only one of them must have standing for the claim to proceed. *See Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014) ("[T]he Supreme Court has made it clear that 'the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.'" (quoting *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006))).

---

[8] Plaintiffs in this circumstance sometimes argue that the alleged harm is "capable of repetition, yet evading review," which is an exception to the mootness doctrine. *Mellen*, at 364. To fall within the ambit of that exception, one must show that "(1) the challenged action is too short in duration to be fully litigated before the case will become moot; *and* (2) there is a reasonable expectation that the complaining party will be subjected to the same action again." *Id.* (emphasis added) (citing *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). But "[g]raduated students do not ordinarily qualify for this exception to the mootness doctrine because, once they have graduated, they will never again be subject to the school's policies." *Id.* Accordingly, J.S. cannot make a claim under this exception.

Moreover, from this point forward, any reference to "Student Plaintiffs" and "Plaintiffs" excludes J.S.

1.

T.R. has not alleged a sufficient injury in fact to establish Article III standing. He alleges only that he attended a high school that previously offered AP AAS, that the school planned to offer the course during the 2024–2025 school year before SCDE removed the course code, and that he would enroll if the course were offered before his graduation. Those allegations amount to no more than the sort of "'some day' intentions" that the Supreme Court rejected in *Lujan*. 504 U.S. at 564 (holding that the plaintiffs' "'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—d[id] not support a finding of the 'actual or imminent' injury that our cases require"). The amended complaint does not allege that T.R. took any concrete steps toward enrolling in AP AAS before its cancellation or otherwise manifested an intent to do so that would satisfy *Lujan*. Had T.R. actually taken concrete steps to enroll in the course, instead of merely expressing an intent to enroll in AP AAS were it offered again, he may have been able to establish standing. But, as pleaded, T.R.'s asserted injury rests on speculation rather than a concrete and particularized harm. He therefore has not alleged an injury in fact, and we affirm the dismissal of the as-applied First Amendment right-to-receive information claim as to him.

2.

SC NAACP doesn't allege an injury in its own right. But it "can establish standing [] as a representative of its members who have been injured in fact, and thus could have brought suit in their own right." *S. Walk at Broadlands Homeowner's Ass'n*, 713 F.3d at 183–84 (cleaned up). To do so, it must "make specific allegations establishing that at least

18

one identified member had suffered or would suffer harm." *Summers*, 555 U.S. at 498. Or, in other words, that at least one of its members would otherwise "have standing to sue in their own right[.]" *S. Walk at Broadlands Homeowner's Ass'n*, 713 F.3d at 184 (citation omitted). Once that showing has been made, an organization must also sufficiently allege that "[1] the interests the organization seeks to protect are germane to the organization's purpose; and [] [2] neither the claim nor the relief sought requires the participation of individual members in the lawsuit." *Id.*

While neither the parties nor the district court addressed these requirements directly as to SC NAACP itself, we can conclude on the record before us that SC NAACP has satisfied the first one—that at least one of its members, A.G., would have standing to sue in their own right. However, because we have an insufficient basis to decide the other elements of representational standing, we cannot determine at this juncture whether SC NAACP, in fact, has standing to bring its claim. We therefore vacate the district court's dismissal of SC NAACP's as-applied First Amendment right-to-receive-information claim and remand for the court to consider those remaining elements in the first instance.

a.

We begin with injury in fact, "the first and foremost element of standing." *Opiotennione v. Bozzuto Mgmt. Co.*, 130 F.4th 149, 153 (4th Cir. 2025) (cleaned up).

SC NAACP has sufficiently alleged that A.G., one of its student members, has suffered an injury in fact. A.G. is a student at a South Carolina high school that previously offered AP AAS and planned to continue offering it until SCDE removed the course code. Unlike the individual Student Plaintiffs, she was enrolled in the course for the next school

year. Now, she "will no longer be able to take [AP AAS] and engage in its advanced study of the history of [her] ancestors while receiving college credit." J.A. 235 ¶ 238.

Weaver's cancellation of AP AAS thus initiated A.G.'s injury, which is alleged to be the infringement of her right to receive information. That injury has a "continuing, present adverse effect[]" and is therefore sufficient to be an Article III injury in fact. *Lujan*, 504 U.S. at 564 (cleaned up). Put differently, so long as the Proviso is in effect, A.G. can't take AP AAS and access the information she seeks. That qualifies as an ongoing injury that is actual and concrete, not theoretical. And because that injury affects her "in a personal and individual way[,]" it is "particularized." *Id.* at 560 n.1. We thus conclude that SC NAACP adequately alleges that A.G. is suffering an ongoing and actual Article III injury in fact sufficient to seek prospective relief.[9] *Cf. Deal*, 911 F.3d at 189.

---

[9] Weaver argues that A.G. doesn't have an injury in fact because her school district offers the alternative honors course that "would cover the same material and would allow her to sit for the AP exam." Resp. Br. 35. This is a merits argument not appropriate for the separate standing inquiry. The amended complaint alleges significant differences between AP AAS and an honors level course: when compared to the honors version, "the AP AAS course was both more comprehensive and interdisciplinary in structure." J.A. 230 ¶ 224. In addition, it is alleged that AP courses are weighted more heavily in a student's grade point average, *and* the State pays the exam fees for students to take AP exams only if they are enrolled in the AP course.

Even assuming A.G.'s alleged injury is as narrow as Weaver describes—the inability to learn the precise information taught in AP AAS—it would be improper to decide whether A.G. would learn the same information from the honors course taught in A.G.'s school district without accepting evidence and only based on Weaver's citation to a news article. *See* Resp. Br. 16 n.8. All that can be considered at a later stage in the proceedings, but not when assessing the injury in fact requirement to establish standing.

3:25-cv-00487-SAL     Filed 07/07/2026     Pg. 21 of 35

b.

Turning to traceability, SC NAACP has adequately alleged that Weaver's enforcement of the Proviso is a "plausible source of" A.G.'s inability to take AP AAS, in which she was enrolled. *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 623 (4th Cir. 2018).

SCDE removed the course code, explaining that since South Carolina schools began offering AP AAS, it was the subject of "significant controversy . . . concerning issues directly addressed by South Carolina's Legislature in a budget proviso." J.A. 231–32 ¶ 227; *see* J.A. 216 ¶ 183 ("Weaver's enforcement of the [] Proviso resulted in the cancellation of AP AAS[.]"); *see also* J.A. 213 ¶ 175 ("In addition to the removal of books from schools, the [] Proviso also censors or limits the discussion and teaching of inclusive curriculum that includes the experiences and perspectives of Black people."). Said differently, based on the allegations in the amended complaint, there's "some causal connection between" Weaver's removal of the AP AAS course code and the local school district's decision not to offer the course. *Rouse v. Fader*, 171 F.4th 272, 280 (4th Cir. 2026) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013)). That's sufficient to allege that A.G.'s injury is traceable to Weaver's enforcement of the Proviso.

Weaver argues that AP AAS's status as a "pilot program" breaks the causal chain and renders any injury not traceable to the course code's removal. In her view, because AP AAS was a pilot course, there "wasn't any *guarantee* that it would immediately and automatically be converted to a standard AP course at the conclusion of the initial pilot period." Resp. Br. 35 (emphasis added). Thus, she contends, the students can't attribute the

21

discontinuation of AP AAS and their inability to enroll in the course to the Proviso. Whether AP AAS was destined to be a permanent course offering is beside the point on a motion to dismiss for lack of standing. After all, we have no information about the nature of AP pilot courses. We do not know, for instance, how such courses operate, how often they are converted to permanent offerings, or the criteria governing that decision. The complaint alleges only that AP AAS was "a pilot program." J.A. 216 ¶ 184. Once the factual record is developed, this argument may carry the day; but that is a merits-based decision for a different stage of the proceedings.

c.

Redressability is likewise satisfied because, if the district court were to enjoin Weaver from enforcing the Proviso and order her to reinstate the AP AAS course code, it's likely that A.G. could re-enroll in AP AAS. *Cf. Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) ("If a defendant's action causes an injury, enjoining the action . . . will typically redress that injury.").

Weaver argues that redressability is lacking because, even if the course code were reinstated statewide, "there is no guarantee that a district *would* offer the AP AAS course just because it could, nor is there any guarantee that either student would be able to secure a spot in the class." Resp. Br. 36–37 (emphasis in original). But a plaintiff need only "show a predictable chain of events" for which judicial relief would likely redress the injury. *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 121 (2025) (quoting *All. for Hippocratic Med.*, 602 U.S. at 385).

22

The amended complaint clears that bar. It plausibly alleges that the Proviso is a substantial obstacle preventing students from accessing AP AAS. *See e.g.*, J.A. 162–63 ¶¶ 12–13 ("Since 2021, the [] Proviso has been used in school districts across South Carolina to restrict or eliminate instruction, training, and resources about racial and gender inequalities. . . . Most recently, in June 2024, the [SCDE] cited the [] Proviso when it removed the statewide course code for [AP AAS]."). The amended complaint also alleges that AP AAS was a successful and well-enrolled course. Based on these allegations, it is at least plausible that school districts would likely offer AP AAS again if the course code were reinstated. In other words, it's likely that removing this barrier to offering the course "personally would benefit [A.G.] in a tangible way." *Sierra Club*, 899 F.3d at 284 (cleaned up). That's enough to show redressability sufficient to survive a motion to dismiss.

To be sure, the Ferguson Memo cited not only the Proviso but also an upcoming "routine cyclical review" of the State's social studies standards as a basis for removing the AP AAS course code. J.A. 95. The district court concluded that this independent, "non-challenged" justification would likely continue to prevent AP AAS from being offered even if the Proviso were enjoined. J.A. 976. Based on the allegations in the amended complaint, that conclusion rests on a faulty assumption and improperly conflates the standing and merits inquiries.

SC NAACP didn't leave the curriculum-review rationale unchallenged. Much the opposite—the amended complaint repeatedly alleges that the review was pretext for removing AP AAS. *See, e.g.*, J.A. 231–32 ¶ 227 (describing the review as a "purported basis" for the course's removal). It points to the timing of SCDE's decision: AP AAS was

23

removed in June 2024, roughly sixteen months before the review process was scheduled to begin, and years before any resulting changes would take effect (the 2026–2027 school year). *See id.* The amended complaint further alleges that AP educators questioned SCDE's rationale, since it "merely presume[d] AP AAS would not pass the cyclical review of the state social studies standards, as the new standards had not yet been created." J.A. 233–34 ¶ 232. And despite strong student interest and enrollment demand, SCDE made the "unexpected and abrupt" decision to discontinue the course without assessing demand at all. *Id.* Those allegations support a plausible inference for purposes of standing that AP AAS was not removed in 2024 because of a standards review that had not yet begun and the results of which would not take effect until a later time.

More fundamentally, whether SCDE removed AP AAS because of the Proviso, the standards review, or both, goes to the merits. By crediting SCDE's alternate rationale over the other and contrary allegations in the complaint, the district court improperly resolved disputed factual issues against the Student Plaintiffs to dismiss their case for lack of standing. Doing so erroneously mixed a merits inquiry into the standing analysis. *See Kerns*, 585 F.3d at 193 (holding that when material jurisdictional facts are intertwined with the merits of a plaintiff's claims, the court "should ordinarily assume jurisdiction and proceed to the intertwined merits issues").

The Supreme Court's recent decision in *Gutierrez v. Saenz*, 606 U.S. 305 (2025), reinforces our conclusion that SC NAACP has adequately alleged redressability, despite the Ferguson Memo's alternative standards-review rationale. There, a state prisoner sought DNA testing of evidence that he claimed would exonerate him. *See id.* at 309–12. After a

24

local prosecutor denied the request, the prisoner sued several state officials, including the prosecutor, alleging that Texas's DNA-testing scheme violated his due process rights by imposing an unconstitutionally burdensome standard for obtaining testing and thereby "depriv[ing] him of his liberty interests in utilizing state postconviction procedures." *Id.* at 312 (cleaned up).

The Fifth Circuit held that the prisoner lacked standing because, even if a court declared Texas's procedures unconstitutional, the prosecutor still might refuse to provide the evidence for testing. *Id.* at 313. The Supreme Court reversed and explained that the Fifth Circuit had improperly "transform[ed] the redressability inquiry into a guess as to whether a favorable court decision will in fact ultimately cause the prosecutor to turn over the evidence." *Id.* at 318. Under a proper application of the Court's precedent, however, a favorable ruling "would redress [Gutierrez's] injury by ordering a change in the legal status of the parties and eliminating the state prosecutor's allegedly unlawful justification for denying DNA testing." *Id.* at 315–16 (cleaned up). As the Court put it, "[t]hat a prosecutor might eventually find another reason, grounded in [state law] or elsewhere, to deny a prisoner's request for DNA testing does not vitiate his standing to argue that *the cited reasons* violated his rights under the Due Process Clause." *Id.* at 320.

So too here. A decision favorable to the Student Plaintiffs—one that declares the Proviso unconstitutional and orders the reinstatement of the AP AAS course code—would "redress [their] injury by removing the allegedly unconstitutional barrier." *Id.* at 319. In other words, Weaver couldn't cite the Proviso or the "significant controversy surrounding the course concerning issues directly addressed by South Carolina's Legislature in a budget

25

proviso," J.A. 231–32 ¶ 227, to justify removing AP AAS. There must be another reason, but that's a merits consideration and not conclusive for standing purposes. Under *Gutierrez*, the relevant question is whether a favorable judgment is likely to remove the challenged obstacle to the students' access to the course. And at this nascent stage, the answer is "yes."

3.

In opposing this outcome, Weaver argues that there isn't a First Amendment right to receive information from the government, and, without a cognizable right, there can be no injury, meaning the Student Plaintiffs don't have standing.

Whether a plaintiff has standing doesn't turn on whether the Constitution ultimately protects her asserted right or interest. Were that so, every claim that failed on the merits would also fail for lack of standing. *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1092 (10th Cir. 2006) (en banc). For that reason, we must not confuse the merits of a claim with a plaintiff's standing to bring that claim. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal.").

To effectively demarcate the two, we "accept as valid the merits of the plaintiff's legal claims," *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 161 (4th Cir. 2023) (cleaned up), and "may not dismiss for lack of standing on the theory that the underlying interest is not legally protected," *Cooksey v. Futrell*, 721 F.3d 226, 239 (4th Cir. 2013) (quoting *Walker*, 450 F.3d at 1093). *See also Walker*, 450 F.3d at 1093 ("[W]here the plaintiff presents a nonfrivolous legal challenge, alleging an injury to a protected right such as free

26

speech, the federal courts may not dismiss for lack of standing on the theory that the underlying interest is not legally protected."); *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 716 (4th Cir. 2015) ("The absence of a valid cause of action does not implicate the court's power to adjudicate the case, and we therefore take care not to conflate a standing inquiry with a merits inquiry." (cleaned up)).

The Student Plaintiffs allege that the First Amendment affords them the right to receive information and that Weaver's enforcement of the Proviso—i.e., removing the AP AAS course code—infringes that right by eliminating their ability to take AP AAS. That claim is not so frivolous that dismissal for lack of standing is warranted. *See Walker*, 450 F.3d at 1093. And we would be remiss not to note that Weaver originally made this argument in support of her 12(b)(6) motion to dismiss for failure to state a claim in the district court—not her 12(b)(1) motion to dismiss for lack of standing. *See* J.A. 519–26.

The contours of the claimed right here are, at best, unsettled. But under our case law, the Student Plaintiffs' standing to bring their claim doesn't turn on the merits. *See Cooksey*, 721 F.3d at 239. Accordingly, we offer no opinion on any First Amendment right to receive information and leave it to the district court to decide that in the first instance, through Weaver's Rule 12(b)(6) motion (or later).[10]

---

[10] To be sure, Weaver cites several cases from our sister circuits that have held students don't have a First Amendment right to receive information from the government. *See, e.g.*, Resp. Br. 27–33. Those decisions, however, were made *on the merits* and *not* as a basis to conclude that the plaintiffs lacked standing. *See, e.g.*, *Penguin Random House, LLC v. Robins*, 172 F.4th 581, 586–88 (8th Cir. 2026) (vacating a preliminary injunction because the plaintiffs were unlikely to succeed on the merits of their claim that an Iowa law "requir[ing the] removal of books containing 'descriptions or visual depictions of a sex
(Continued)

3:25-cv-00487-SAL    Date Filed 07/08/26

\* \* \*

In sum, we conclude that T.R. lacks an injury in fact and therefore doesn't have standing, so we affirm the dismissal of his as-applied First Amendment right-to-receive-information claim. SC NAACP seeks to vindicate A.G.'s injury through representational standing as one of its student members. And because A.G. would have standing to bring a right-to-receive-information claim on her own, SC NAACP satisfies the first representational standing requirement. We leave it to the district court to decide in the first instance whether the other two requirements are satisfied.[11] Thus, for SC NAACP, we vacate the district court's dismissal of its as-applied right-to-receive-information claim for lack of standing and remand for further proceedings.

act' from [] public school libraries" violates either a student's right to receive information or one's right to communicate with their intended audience); *Little v. Llano Cnty.*, 138 F.4th 834, 841–848 (5th Cir. 2025) (en banc) (vacating a preliminary injunction after concluding that the plaintiffs were unlikely to succeed on the merits of their claim that the removal of books from a public library violates their First Amendment right to receive information); *Walls v. Sanders*, 144 F.4th 995, 999 (8th Cir. 2025) (vacating a preliminary injunction after concluding that the student-plaintiffs were unlikely to succeed on the merits of their First Amendment right-to-receive-information challenge to an Arkansas law that they claimed "prohibits their teachers from providing classroom materials and instruction about Critical Race Theory"). To reiterate, we express no opinion on the soundness of these decisions or the merits of the claim here. We simply note that these cases were decided at a different posture than this one, thus reinforcing our view that this is properly not something for us to decide now for standing purposes.

[11] Those are, that "the interests the organization seeks to protect are germane to the organization's purpose; and [] neither the claim nor the relief sought requires the participation of individual members in the lawsuit." *S. Walk at Broadlands Homeowner's Ass'n*, 713 F.3d at 184.

For completeness' sake, we note that SC NAACP also identifies another student member, J.C., in the amended complaint. Because it need only identify one member that would have standing individually, and because we conclude A.G.'s standing is sufficient, we don't address whether J.C. would have standing to bring suit on her own. We trust the district court can do so should that become necessary on remand.

3:25-cv-00487-SAL    Filed: 07/07/2026    Pg: 29 of 35

D.

We now turn to whether Kendi has standing to bring his First Amendment viewpoint discrimination claim.

As to injury in fact, the amended complaint alleges that the Proviso discriminates against certain viewpoints as demonstrated by District Three's removal of *Stamped* from circulation in its schools and libraries after concluding that it was "adverse" to the Proviso. J.A. 211–12 ¶ 165. That "[d]iscriminatory treatment is a harm that is sufficiently particular to qualify as an actual injury for standing purposes."[12] *Planned Parenthood of S.C. Inc. v. Rose*, 361 F.3d 786, 790 (4th Cir. 2004). And his injury remains "ongoing"—*Stamped* is still unavailable in District Three schools—which is enough to show injury for him to have standing to seek the prospective relief he does here. *Cf. Deal*, 911 F.3d at 189.

As to traceability and redressability, which "are often flip sides of the same coin[,]" *All. for Hippocratic Med.*, 602 U.S. at 380 (cleaned up), Kendi satisfies both at this stage. He has sufficiently alleged a causal connection between the alleged discrimination he has suffered—the removal of *Stamped* based on the viewpoint he expresses therein—and District Three's enforcement of the Proviso. *See, e.g.*, J.A. 211 ¶ 164 ("In October 2022, [] District Three [] banned and removed *Stamped* . . . from all of its schools and libraries, due to concerns that it violated the [] Proviso." (citing J.A. 80)). And as a result, enjoining the

---

[12] The fact that two of Dr. Kendi's books remain in District Three libraries is not dispositive of whether he has standing to challenge the removal of *Stamped*. *See* Resp. Br. 43 (arguing that "Kendi [] lacks standing because he hasn't been excluded from District Three's libraries[,]" as two of his books are still on the shelves). It would be improper to hold that Kendi doesn't have a First Amendment viewpoint discrimination claim unless District Three discriminates against *all* his viewpoints.

enforcement of the Proviso and ordering *Stamped* to be placed back on District Three's shelves would likely redress Kendi's injury.

District Three resists this conclusion by pointing to the letter from its Chief Academic Officer, which states that the materials review committee determined *Stamped* should be removed from circulation because it violated South Carolina's Materials Selection Criteria. That is, it posits that the removal of *Stamped* wasn't because of the Proviso, but the book's "inaccuracies and lack of objectivity." J.A. 78. The district court accepted this argument, concluding that Kendi didn't have standing because even if District Three removed *Stamped* because of the Proviso, as Kendi alleges, the review committee's reliance on the "Materials Selection Criteria" is "an independent, non-challenged action" that also caused the removal. J.A. 979. In reaching that conclusion, the district court looked past the allegations in the amended complaint and credited District Three's proffered alternative, non-discriminatory basis for removal. But to do so was error at this stage because the court was required to "accept the [] facts from the amended complaint and the incorporated exhibits as true and draw all reasonable inferences from them in favor of [Kendi]." *Menders*, 65 F.4th at 160.

Viewed in the light most favorable to Kendi, the amended complaint plausibly alleges that the Proviso, not the Materials Selection Criteria, was the reason *Stamped* was removed from District Three's libraries. *See* J.A. 212 ¶ 170 ("School District Three Defendant's *disagreement with the opinions contained in the* book, not the book's educational suitability, drove the decision to remove *Stamped* from the school district's library shelves." (emphasis added)). Notes that are alleged to be from a member of the

30

materials review committee (received from a FOIA request) observed that *Stamped* "constantly presents the analogy that being white equals racism[,]" which "would be adverse to" the Proviso.[13] J.A. 80, 211 ¶ 165. The amended complaint also alleges (and District Three doesn't dispute) that *Stamped* was removed without anyone making a formal complaint, and was the only book that District Three reviewed and removed between August 2022 and November 2023. All this to say, Kendi's amended complaint didn't leave the Materials Selection Criteria justification "non-challenged." J.A. 979. The district court thus erred in resolving that dispute against Kendi at the motion-to-dismiss stage for standing purposes.

Last, we can't accept District Three's argument that Kendi lacks standing because "[t]here is no cognizable First Amendment right for an author to have his book placed (or retained) in a public-school library." Resp. Br. 39. In short, District Three maintains that a public school's curation of its library is government speech and therefore not subject to First Amendment scrutiny. But, like Weaver's argument that the Student Plaintiffs lack standing to bring their right-to-receive-information claim, the government speech argument is a merits inquiry to be determined on a Rule 12(b)(6) motion or at a later stage

---

[13] Kendi cited the full FOIA exhibit in the amended complaint. *See* J.A. 211 ¶ 164 n.146; J.A. 165; *see* J.A. 78–85. It doesn't appear, however, that Kendi was offering the exhibit and its contents for their truthfulness. In other words, he didn't incorporate the exhibit to show that the review committee removed *Stamped* because of the Materials Selection Criteria; he was offering it for another portion in which the committee member directly discussed the Proviso as a basis for its removal. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016) ("[I]n cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true.").

in the case. To reiterate, when assessing standing, we must not confuse the merits of Kendi's claim with his standing to bring that claim. *See Warth*, 422 U.S. at 500. Instead, we *must* "accept[] as valid the merits of [Kendi's] legal claims," *Laufer*, 60 F.4th at 161, meaning that we will take as given for now that Kendi has a First Amendment right to be free from discrimination based on his viewpoint and that this right *could have been* violated under the circumstances alleged. *See Walker*, 450 F.3d at 1093.

Further, District Three has not cited, and we have not located, any case in which a plaintiff's claims were dismissed for lack of standing by way of the government speech doctrine. Instead, the cases District Three cites in support of its position are all at the Rule 12(b)(6) stage or on the merits at a later point in the litigation. *See, e.g.*, *Chiras v. Miller*, 432 F.3d 606, 616–18, 620 (5th Cir. 2005) (affirming the dismissal of a First Amendment case under Rule 12(b)(6) based on the government speech doctrine); *People for the Ethical Treatment of Animals, Inc. v. Gittens*, 414 F.3d 23, 28–29 (D.C. Cir. 2005) (addressing government speech argument in an appeal from the district court's final judgment on the merits). And we note that in the district court, District Three raised the government speech doctrine in support of its 12(b)(6) motion—not as a basis for finding Kendi doesn't have standing under Rule 12(b)(1). *See* J.A. 490, 519, 526–28.

In sum, we conclude that, at this stage, Kendi has standing to bring his First Amendment viewpoint discrimination claim. We leave it for the district court to decide District Three's 12(b)(6) motion in the first instance, including whether the government speech doctrine precludes Kendi's claim.

32

E.

There are still some other claims left. The Student Plaintiffs brought a facial First Amendment right-to-receive-information challenge to the Proviso. And all Plaintiffs brought Fourteenth Amendment void-for-vagueness and equal protection claims. While the district court dismissed the amended complaint in its entirety, it didn't discuss those claims when addressing Plaintiffs' standing. Perhaps the district court intended to address all the claims based on the redressability of Plaintiffs' alleged injuries. But it didn't say as much or recognize that those claims existed as alleged in the amended complaint. It was error to dismiss those claims without stating a basis for doing so. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("Standing is not dispensed in gross." (cleaned up)); *Allen v. Wright*, 468 U.S. 737, 752 (1984) ("[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted."), *abrogated on other grounds by Lexmark Int'l, Inc.*, 572 U.S. at 118. Accordingly, mindful that "we are a court of review, not first view," *Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d 236, 243 (4th Cir. 2020), we vacate the dismissal of those claims and leave it to the district court to address in the first instance standing for the First Amendment right-to-receive-information facial challenge and the void for vagueness and equal protection claims.

Finally, because the district court dismissed the case for lack of standing, it had no occasion (nor jurisdiction) to pass on the merits of Plaintiffs' preliminary injunction motion. *See Adams Outdoor Advert. P'ship v. Beaufort Cnty.*, 105 F.4th 554, 566 (4th Cir.

2024). Accordingly, we vacate the denial of that motion and remand for further proceedings should the case reach that point.

III.

The amended complaint sufficiently alleges that SC NAACP satisfies the first of three requirements for representational standing. We leave it to the district court to decide whether it satisfies the other two requirements in the first instance on remand. Likewise, the amended complaint sufficiently alleges that Kendi has standing to bring his viewpoint discrimination claim, and the district court erred in concluding otherwise. We reiterate, however, that Plaintiffs' burden to prove standing doesn't end here; they must support each element of standing "with the manner and degree of evidence required at the successive stages of the litigation."[14] *Lujan*, 504 U.S. at 561.

To recap, we: (1) affirm the dismissal of J.S.; (2) affirm the dismissal of the as-applied First Amendment right-to-receive-information claim (Count One) as to T.R. for lack of standing, but vacate that claim as to SC NAACP and remand for the district court to assess SC NAACP's representational standing in the first instance; (3) reverse the dismissal of Kendi's First Amendment viewpoint discrimination claim for lack of standing (Count Two); (4) vacate the dismissal of the Student Plaintiffs' facial challenge to the Proviso (Count One), Plaintiffs' First Amendment void-for-vagueness claim (Count

---

[14] Because standing is a threshold jurisdictional issue, nothing in our opinion should be construed to limit the district court's ability to sua sponte raise the issue at any point moving forward.

3:25-cv-00487-SAL   Date Filed 07/08/26   Entry Number 103   Page 35 of 35

35

Three), and Plaintiffs' Fourteenth Amendment equal protection claims (Counts Four and Five) and remand for the district court to decide in the first instance whether they have alleged standing to bring these claims; (5) vacate the denial of the motion for a preliminary injunction; and (6) remand this case for further proceedings consistent with this opinion.

*AFFIRMED IN PART,*
*REVERSED IN PART,*
*VACATED IN PART, AND*
*REMANDED WITH INSTRUCTIONS*